UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CLAUDE RUFFIN and ALI SHABAZZ,

                              PLAINTIFFS,
         vs.

THE CITY OF NEW YORK, ICL, DHS,
FJC SECURITY SERVICES, P.O. ERIC ANDREOLI
P.O. JANINE MASSO, SGT. DAVID ECHEVARRIA,
SERGEANT STEVEN BENNETT, PO OUCKLEY
CROOKS, PO RYAN MOONEY, JOHN DOE
SECURITY EMPLOYEES 1-2, JOHN DOE
RESIDENCE EMPLOYEES 1-2; DEFENDANT
"JOHN DOE" POLICE OFFICERS 1-15;

                            DEFENDANTS.
_____

INDEX NO. 16-cv-1538

Jury Trial Demanded

AMENDED
COMPLAINT

       Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ, by their attorney, David A. Thompson, of Stecklow & Thompson, complaining of the defendants, respectfully allege as follows:

## I.    PRELIMINARY STATEMENT

       1.    Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States. In addition, the plaintiffs bring claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12102(2) and the Rehabilitation Act of 1973, 29 U.S.C. § 705(20). The Plaintiffs bring claims under New York State law, including the Human Rights Law ans the common law. In addition to compensatory and punitive damages, both plaintiffs seek the award of statutory attorneys fees, expenses, and costs.

2.    Plaintiff CLAUDE RUFFIN is a totally blind veteran of the United States armed forces, or 62 years of age.  Plaintiff ALI SHABAZZ is also a veteran.  Both are homeless.

3.    On December 31, 2014, Defendant police officers entered the Borden Avenue Residence for the homeless and placed Mr. Ruffin in custody.  The officers did not verbally identify themselves as police.  They physically  grabbed Mr. Ruffin and began to walk him into the corridor and down the hall.   Mr. Ruffin did not know what was happening and thought he was being attacked.  The police began to use force on Mr. Ruffin, pushing him to the floor.  Mr. Ruffin's right arm was injured.  Only when Mr. Ruffin felt the gun and gunbelt of one of the people on top of him did Mr. Ruffin realize that he was dealing with police.  Mr. Ruffin was arrested, and held for approximately 24 hours.  All charges were eventually dismissed pursuant to an ACD.

4.    Plaintiff ALI SHABAZZ was in the corridor when the police brought Mr. Ruffin to the ground.  Mr. Shabazz tried to explain to the police officers that Mr. Ruffin was blind and disabled, and that their treatment of him was unnecessary and wrong.  In retaliation for this, one of the officers ordered Mr. Shabazz's arrest.  Mr. Shabazz was arrested and held for approximately 24 hours.  He was prosecutes for offenses he did not commit.  He was required to appear in court approximately 10 times before the charges were dismissed.

## II.    JURISDICTION

5.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is

conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the aforementioned statutory and constitutional provisions.

6.     Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ further invoke this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all state law claims and causes of action.

## III.   VENUE

7.     Venue is proper for the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this district

## IV.   JURY DEMAND

8.     Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V.   THE PARTIES

9.     Plaintiffs CLAUDE RUFFIN is a resident of the State of New York.

10.    Plaintiffs ALI SHABAZZ is a resident of the State of New York.

11.    At the time of the incident complained of herein, the plaintiffs were homeless.

12.    Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

13.    Defendant THE CITY OF NEW YORK maintains the New York City Police Department ("NYPD").

14.     Defendant the Department of Homeless Services (DHS) is a department of the government of the City of New York.

15.     Defendant ICL is a corporation doing business in the State of New York.

16.     Upon information and belief, ICL operates the Borden Avenue Veterans Residence as an agent of DHS and the City of New York.

17.     Defendant John Doe Residence Employees 1-2  were employees and agents of ICL, DHS, and the City of New York.

18.     Defendant FJC Secuirty Services, Inc. is a corporation doing business in the State of New York.

19.     But information and belief, FJC Secuirty Services  participates in operating the Borden Avenue Veterans Residence  as an agent of ICL, DHS, and the City of New York.

20.     Defendant John Doe Security Employees 1-2  are or were employees or agents of defendant FJC Security Services, Inc., or of ICL, or DHS.

21.    P.O. Eric Andreoli  was or is an officer of the NYPD.

22.    P.O. Janine Masso was or is an officer of the NYPD.

23.    Sgt. David Echevarria was or is an officer of the NYPD.

24.    Sergeant Steven Bennett was or is an officer of the NYPD.

25.    PO Ouckley Crooks was or is an officer of the NYPD.

26.    PO Ryan Mooney was or is an officer of the NYPD.

27.    Defendant "John Doe" POLICE OFFICERS 1-15 ( together with the other officers named, "The Defendant POLICE OFFICERS") were or are  officers of the NYPD.

28.     All  defendant officers were acting under the supervision of said department and within the scope of their employment.

29.     Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ sue the Defendant POLICE OFFICERS in both their official and individual capacities.

30.     Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ will amend this complaint to name the Defendant "John Doe" POLICE OFFICERS as their identities can be established to a reasonable certainty.

31.     At all times relevant to this action, the defendants were acting under color of state law.

32.     The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

33.     Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope and in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI.     FACTS COMMON TO ALL CLAIMS

34.     Plaintiff CLAUDE RUFFIN is a 62 year old male is totally blind and walks with a cane.

35.     He is a veteran of the United States armed forces.

36.     On December 31, 2014 Plaintiff CLAUDE RUFFIN was in his room in the Borden Avenue Residence on 21-10 Borden Avenue, Long Island City New York 1110.

37.   The Borden Avenue Residence is long-term homeless shelter or publicly-assisted housing accommodation.

38.   Defendant John Doe Security Employees 1-2 and John Doe Residence Employees 1-2 at various times throughout the evening, took Mr. Ruffins radio, and his cane, and teased and taunted him.

39.   When Defendant John Doe Security Employees 1-2 and John Doe Residence Employees 1-2 took Mr. Ruffin's radio,  they deprived him of the ability to orient himself in space.

40.   Mr. Ruffin  uses the direction of the sound of the radio in his room to tell himself where in his room is currently located.

41.   When Defendant John Doe Security Employees 1-2 and John Doe Residence Employees 1-2 took Mr. Ruffin's cane,  they took the only other device that Mr. Ruffin can use to orient himself and move around safely.

42.   When Defendant John Doe Security Employees 1-2 and John Doe Residence Employees 1-2 teased and taunted Mr. Ruffin,  they deprived him of his right, as a disabled man and a veteran,  to live in peace and dignity in his home, the Borden Avenue Veterans Residence.

43.   Defendants FJC Ssecurity Services,  ICL,  DHS,  and the City of New York were responsible to ensure that the Borden Avenue Veterans Residence  was a safe and dignified place for Mr. Ruffin to live.    By the herein described acts, these defendants  breached that duty.

44.   Defendants FJC Ssecurity Services,  ICL,  DHS,  and the City of New York were responsible to ensure that their agents, including Defendant John Doe Security

Employees 1-2, did not deprive Mr. Ruffin of his rights as a resident and his rights under the Americans with disabilities act. By the herein described acts, these defendants breached that duty.

45. The Defendant Police Officers entered the Borden Avenue veterans residence.

46. Upon information and belief, Defendants FJC Ssecurity Services, ICL, Defendant John Doe Security Employees 1-2 and John Doe Residence Employees 1-2 attempted to cause the defendant police officers to arrest Mr. Ruffin.

47. Defendants P.O. Eric Andreoli, P.O. Janine Masso, and Sgt. David Echevarria attempted to place Mr. Ruffin under arrest.

48. None of them identified themselves to Mr. Ruffin as police officers before doing so.

49. None of Defendants FJC Ssecurity Services, ICL, Defendant John Doe Security Employees 1-2 and John Doe Residence Employees 1-2 took any steps to ensure that Mr. Ruffin was notified that police officers were interacting with him, or that they were trying to place him under arrest.

50. For Mr. Ruffin's perspective, after being deprived of his radio, and his cane, and being taunted by Defendants FJC Ssecurity Services, ICL, Defendant John Doe Security Employees 1-2 and John Doe Residence Employees 1-2, the unidentified police seemed to be new assailants attempted to harm and humiliate him.

51. Mr. Ruffin's blindness is visually obvious, and the defendant police officers should have known, and did know, of the need to identify themselves to Mr. Ruffin before attempting to place him under arrest.

52. The defendant police officers, now including Sergeant Steven Bennett, PO Ouckley Crooks, and PO Ryan Mooney tried pull Plaintiff CLAUDE RUFFIN down the corridor faster than he could walk.

53. Plaintiff CLAUDE RUFFIN protested and tried to slow down.

54. The defendant police officers began to use force on Mr. Ruffin without identifying themselves and giving him a chance to understand the facts that were hidden to him because he was blind — in particular, the fact that he was dealing with police — so that he could comply and avoid injury.

55. Plaintiff CLAUDE RUFFIN learned that the people attacking him were police officers only after he was tackled to the ground and he felt that one of the people on top of him was wearing a gun.

56. Plaintiff CLAUDE RUFFIN was subjected to assault and battery by Defendant POLICE OFFICERS.

57. As a result, Plaintiff CLAUDE RUFFIN's right arm was injured, requiring hospital treatment several days later.

58. Plaintiff CLAUDE RUFFIN's range of motion without pain remains limited.

59. Plaintiff CLAUDE RUFFIN was arrested and was held in custody for approximately 24 hours.

60. Plaintiff CLAUDE RUFFIN's arrest was without a warrant and without probable cause.

61. Plaintiff CLAUDE RUFFIN was conscious of his confinement and did not consent to it.

62. All charges against Plaintiff CLAUDE RUFFIN were ultimately dismissed with an ACD.

63. On December 31, 2014 Plaintiff ALI SHABAZZ was also lawfully present in the Borden Avenue Residence on 21-10 Borden Avenue.

64. Like Plaintiff CLAUDE RUFFIN, Plaintiff ALI SHABAZZ is a veteran of the United States armed forces.

65. Plaintiff ALI SHABAZZ was one of the civilians present in the hallway when Defendant John Doe Police Officers 1-6 assaulted and arrested Plaintiff CLAUDE RUFFIN.

66. Witnessing the scene, Plaintiff ALI SHABAZZ told the Defendant POLICE OFFICERS not to hurt or arrest Plaintiff CLAUDE RUFFIN.

67. Plaintiff ALI SHABAZZ tried to bring to the officers' attention the fact that Plaintiff CLAUDE RUFFIN was blind and disabled.

68. In response, a police officer pointed to Plaintiff ALI SHABAZZ and said, in sum and substance, "Arrest him."

69. Defendants P.O. Eric Andreoli, P.O. Janine Masso, Sgt. David Echevarria, Sergeant Steven Bennett, PO Ouckley Crooks, and PO Ryan Mooney arrested Plaintiff ALI SHABAZZ

70. Plaintiff ALI SHABAZZ was arrested without a warrant and without probable cause.

71. Plaintiff ALI SHABAZZ was held in custody for approximately 24 hours.

72. Plaintiff ALI SHABAZZ was unlawfully prosecuted, and was required to return to court to defend himself approximately 10 times.

73.     All charges against Plaintiff ALI SHABAZZ were dismissed outright.

74.     Throughout the foregoing assault and arrest, Defendant John Does 9-15 witnessed the unlawful conduct of the other officers, had the opportunity to intervene, and failed to do so.

75.     As a result of the Defendants' constitutionally impermissible conduct, Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ were caused to suffer personal injuries, violations of their civil rights, mental and emotional distress, and loss of liberty.

76.     Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ demand judgment against the defendants in a sum to be determined by the jury at trial.

# VII. CLAIMS FOR RELIEF

<u>FIRST CLAIM</u>

<u>DEPRIVATION OF PLAINTIFFS'
CIVIL RIGHTS</u>

77. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

78. All of the aforementioned acts of Defendant THE CITY OF NEW YORK, ICL, DHS, DEFENDANT FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 and the POLICE OFFICER DEFENDANTS were carried out under the color of state law.

79. All of the foregoing acts by Defendants deprived Plaintiffs of federally protected rights, including, but not limited to, the right:

    a.    To freedom from seizure and arrest not based upon probable cause;
    b.    To freedom from being subjected to false criminal charges by the police;
    c.    To freedom from excessive force being used upon them; and
    d.    To freedom from retaliatory prosecution.

80. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

81. As a result of the Defendants' constitutionally impermissible conduct, Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ were caused to suffer personal injuries, violations of their civil rights, mental and emotional distress, and loss of liberty.

82.    Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ demand judgment against the defendants in a sum to be determined by the jury at trial.

SECOND CLAIM

FALSE ARREST

83.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

84.    Plaintiffs were subjected to false arrest by the THE CITY OF NEW YORK, ICL, DHS, DEFENDANT FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 and the POLICE OFFICER DEFENDANTS on December 31, 2014.

85.    Plaintiffs' liberty was restricted for an extended period of time, Plaintiffs were put in fear for their safety, and Plaintiffs were caused to suffer embarrassment and humiliation, without probable cause.

86.    As a result of the Defendants' constitutionally impermissible conduct, Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ were caused to suffer personal injuries, violations of their civil rights, mental and emotional distress, and loss of liberty.

87.    Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ demand judgment against the defendants in a sum to be determined by the jury at trial.

THIRD CLAIM

FAILURE TO INTERVENE

88.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

89. Throughout Plaintiffs' December 31, 2014 arrests by the Defendant POLICE OFFICERS, each of the individual defendants had an affirmative duty to intervene on Plaintiffs' behalf to prevent the violation of their constitutional rights.

90. Each of the individual defendants failed to intervene on Plaintiffs' behalf to prevent the violation of their constitutional rights despite having had realistic opportunities to do so.

91. Each of the individual defendants  failed to intervene on Plaintiffs' behalf to prevent the violation of their constitutional rights despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

92. As a result of the aforementioned conduct of each of the individual Defendant THE CITY OF NEW YORK Police Officers, Plaintiffs' constitutional rights were violated.

93. As a result of the Defendants' constitutionally impermissible conduct, Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ were caused to suffer personal injuries, violations of their civil rights, mental and emotional distress, and loss of liberty.

94. Plaintiffs CLAUDE RUFFIN and ALI SHABAZZ demand judgment against the defendants in a sum to be determined by the jury at trial.

## FOURTH CLAIM

## EXCESSIVE FORCE

95. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

96.	On December 31, 2014 the Defendant Police Officers used excessive force against Plaintiff CLAUDE RUFFIN.

97.	At no point did the circumstances presented to Defendant Police Officers support the above-mentioned applications of force on the Plaintiff.

98.	Plaintiff CLAUDE RUFFIN was subjected to excessive force in violation of his rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

99.	As a result of the Defendants' violations, Plaintiff CLAUDE RUFFIN was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

100.	Plaintiff CLAUDE RUFFIN demands judgment against the defendants in a sum to be determined by the jury at trial.

## FIFTH CLAIM

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE 42 U.S.C. § 12132 ET SEQ.

101.	Plaintiff CLAUDE RUFFIN's disabilities make him a "qualified individual," as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2) and the Rehabilitation Act of 1973, 29 U.S.C. § 705(20).

102.	Defendant THE CITY OF NEW YORK is a public entity that receives federal funding and is subject to the Title II of the ADA and the Rehabilitation Act.

103.	Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS who interacted with Plaintiff CLAUDE RUFFIN knew he was blind, and therefore disabled.

104. Defendants ICL, DHS, FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 and the POLICE OFFICER DEFENDANTS are also subject to the ADA and the rehabilitation act.

105. 42 U.S.C. § 12132 (Title II of the American with Disabilities Act) states "that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

106. As a public entity, Defendant THE CITY OF NEW YORK comes under the mandate of Title II of the Americans with Disabilities Act and therefore is obligated to ensure that it provides reasonable accommodation to qualified individuals with respect to its benefits of the services, programs, or activities and does not discriminate against qualified individuals.

107. The actions of the NYPD, ICL, DHS, FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 and the POLICE OFFICER DEFENDANTS qualify as benefits of the services, programs, or activities of Defendant THE CITY OF NEW YORK, under Title II of the American with Disabilities Act.

108. Defendants THE CITY OF NEW YORK, ICL, DHS, FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 and the POLICE OFFICER DEFENDANTS and their  employees and agents were under a statutory duty to provide services, including police services, in a

manner equivalent to the services provided those not suffering Plaintiff CLAUDE RUFFIN's disability.

109. Defendants THE CITY OF NEW YORK, ICL, DHS, FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 and the POLICE OFFICER DEFENDANTS and their employees and agents were under a statutory duty to provide reasonable accommodation to the Plaintiff CLAUDE RUFFIN's disability.

110. Defendants THE CITY OF NEW YORK, ICL, DHS, FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 and the POLICE OFFICER DEFENDANTS and their employees and agents failed to do so. The Defendant POLICE OFFICERS failed to verbally identify themselves as police officers. They failed to transport Plaintiff CLAUDE RUFFIN out of his room, into the corridor, and down the corridor in a manner consistent with his blindness and physical limitations in mobility. Defendants DHS, FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, and JOHN DOE RESIDENCE EMPLOYEES 1-2 violated Mr. Ruffin's right to have all the benefits of living in the Borden Avenue Veterans Residence that a sighted person would have, including the right not to be deprived of his ability to orient himself in space and not to be humiliated for his disability.

111. These failures constitute discrimination in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

112.  As a result of the Defendants' violations, Plaintiff CLAUDE RUFFIN was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

113.  Plaintiff CLAUDE RUFFIN demands judgment against the defendants in a sum to be determined by the jury at trial.

<u>SIXTH CLAIM</u>

<u>VIOLATION OF THE AMERICANS WITH DISABILITIES ACT</u>
<u>42 U.S.C. § 12203</u>

114.  Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

115.  Defendant THE CITY OF NEW YORK is a public entity that receives federal funding and is subject to the Title II of the ADA and the Rehabilitation Act.

116.  Defendants THE CITY OF NEW YORK, ICL, DHS, FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 and the POLICE OFFICER DEFENDANTS and their  employees and agents who interacted with Plaintiff CLAUDE RUFFIN knew he was blind, and therefore disabled.

117.  Pursuant to 42 U.S.C. § 12203, it is unlawful to retaliate against "any individual" because such individual has opposed discrimination made unlawful by the Americans with Disabilities Act.

118.  Furthermore, pursuant to 42 U.S.C. § 12203, it is unlawful to "coerce, intimidate, threaten, or interfere with any individual" … "on account of his or her having

aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

119. Plaintiff CLAUDE RUFFIN is an individual who suffers from disabilities rendering him a "qualified person" under the ADA.

120. Defendants THE CITY OF NEW YORK, ICL, DHS, FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 and the POLICE OFFICER DEFENDANTS and their employees and agents deprived Mr. Ruffin of the tools he uses to orient himself in space and taunted and humiliated him because he is disabled.

121. Plaintiff ALI SHABAZZ opposed discrimination against Plaintiff CLAUDE RUFFIN by the Defendants.

122. In retaliation, Plaintiff ALI SHABAZZ was arrested and prosecuted for a crime he did not commit.

123. Plaintiff ALI SHABAZZ aided and encouraged Plaintiff CLAUDE RUFFIN in the exercise or enjoyment of his rights under the ADA

124. The Defendants' arrest and prosecution of Plaintiff ALI SHABAZZ served to coerce, intimidate, threaten, and interfere with Plaintiff ALI SHABAZZ's aid and encouragement to Plaintiff CLAUDE RUFFIN.

125. As a result of the Defendants' violations, Plaintiff ALI SHABAZZ was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

126. Plaintiff ALI SHABAZZ demands judgment against the defendants in a sum to be determined by the jury at trial.

## NINTH CLAIM

## THE REHABILITATION ACT
### 29 U.S.C. § 794

127.  Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

128.  Plaintiff CLAUDE RUFFIN is totally blind and primarily and is a qualified individual with a disability under the law.

129.  Defendant THE CITY OF NEW YORK is a public entity that receives federal funding and is subject to the Title II of the ADA and the Rehabilitation Act.

130.  Defendants THE CITY OF NEW YORK, ICL, DHS, FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 and the POLICE OFFICER DEFENDANTS and their employees and agents who interacted with Plaintiff CLAUDE RUFFIN knew he was blind, and therefore disabled.

131.  The Rehabilitation Act pursuant to § 504 provides, "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]" 29 U.S.C. § 794.

132.  Plaintiff CLAUDE RUFFIN was entitled to the same homeless resident services that Defendants THE CITY OF NEW YORK, ICL, DHS, DEFENDANT FJC

SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE
RESIDENCE EMPLOYEES 1-2  provided to other non-disabled persons.

133.  Defendants THE CITY OF NEW YORK, ICL, DHS, FJC Security
Services, John Doe Security Employees 1-2, John Doe Residence Employees 1-2 and the
Police Officer Defendants and their  employees and agents deprived Mr. Ruffin  of
equivalent services by depriving him of the tools he needed to orient himself in space,
and mocking and humiliating him for being blind.

134.  Plaintiff CLAUDE RUFFIN was entitled to the same law enforcement
services that Defendant provides to other non-disabled persons.

135.  Specifically, Plaintiff CLAUDE RUFFIN was entitled to the benefit of a
lawful exercise of police powers, including but not limited to the right not to be subjected
to an unlawful discrimination.

136.  Defendants discriminated against Plaintiff CLAUDE RUFFIN solely
because of his disability and failed to provide reasonable accommodation.

137.  Defendants' actions were taken under circumstances giving rise to an
inference of discrimination. Defendants intentionally discriminated against plaintiff
and/or was deliberately indifferent towards Plaintiff CLAUDE RUFFIN's rights.

138.  As a result of the Defendants' violations, Plaintiff CLAUDE RUFFIN was
caused to suffer personal injuries, violations of his civil rights, mental and emotional
distress, and loss of liberty.

139.  Plaintiff CLAUDE RUFFIN demands judgment against the defendants in
a sum to be determined by the jury at trial.

<u>TENTH CLAIM</u>

<u>THE NEW YORK CITY HUMAN RIGHTS LAW</u>
<u>N.Y.C. ADMIN. CODE § 8-102(9)&(18), § 8-107(4),(5),(7)&(13)</u>

140.  Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

141.  The New York City Human Rights Law ("NYCHRL") states, in part: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived … disability … status of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof…."

142.  The NYCHRL also states: "The term 'place or provider of public accommodation' shall include providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind."

143.  The New York City Human Rights Law ("NYCHRL") states, in part: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter…."

144.  The NYCHRL definition of "reasonable accommodation" is "such accommodation that can be made that shall not cause undue hardship in the conduct of the covered entity's business."

145.  Defendants THE CITY OF NEW YORK, ICL, DHS, DEFENDANT FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, AND JOHN DOE

RESIDENCE EMPLOYEES 1-2 are providers of public accommodation within the meaning of these provisions

146.  The defendants denied Plaintiff CLAUDE RUFFIN reasonable accommodations for his disabilities of blindness and limited mobility.

147.  The defendants retaliated against Plaintiff ALI SHABAZZ for opposing this unlawful practice.

148.  As a result of the Defendants' violations, the plaintiffs were caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

149.  Plaintiffs demand judgment against the defendants in a sum to be determined by the jury at trial.

<u>ELEVENTH CLAIM</u>

<u>THE NEW YORK STATE HUMAN RIGHTS LAW</u>
<u>EXECUTIVE LAW § 290 ET SEQ.</u>

150.  Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

151.  The New York State Human Rights Law ("NYSHRL") makes it unlawful for a provider of publicly-assisted accommodations to discriminate in the "conditions or privileges of any publicly-assisted housing accommodations or in the furnishing of facilities or services in connection therewith."

152.  The NYSHRL makes it unlawful to retaliate against any individual who opposed any unlawful discrimination.

153.  The Borden Avenue Residence is a publicly-assisted accommodation owned, controlled or operated by the City of New York.

154.  Defendants THE CITY OF NEW YORK, ICL, DHS, DEFENDANT FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2 discriminated against Plaintiff CLAUDE RUFFIN in the privileges, conditions, and furnishing of services related to his residence at the Borden Avenue Residence by reason of their failure to make reasonable accommodation for his blindness.

155.  Defendants THE CITY OF NEW YORK, ICL, DHS, DEFENDANT FJC SECURITY SERVICES, JOHN DOE SECURITY EMPLOYEES 1-2, JOHN DOE RESIDENCE EMPLOYEES 1-2, retaliated against Plaintiff ALI SHABAZZ for his opposition to this unlawful failure to accommodate.

156.  As a result of Defendants' violations, the plaintiffs were caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

157.  Plaintiffs demand judgment against Defendant CITY OF NEW YORK in a sum to be determined by the jury at trial.

TWELFTH CLAIM

MONELL

158.  Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

159.  The Defendants' arrest and use of excessive force against Plaintiff CLAUDE RUFFIN occurred because of unlawful customs, policies and practices of the Defendant CITY OF NEW YORK.

160.  The Defendants' arrest and prosecution of Plaintiff ALI SHABAZZ occurred because of unlawful customs, policies and practices of the Defendant CITY OF NEW YORK.

161.  The City of New York, through its police department, have a policy and practice of treating persons with handicaps, such as blindness, deafness, or autism, as criminals.

162.  Such handicapped individuals' behavior, or limitations on their capacity to adapt their behavior, are treated as intentional criminal acts, notwithstanding that the intentional element of such individuals' conduct is negated by the existence of their disability.

163. The City of New York, through its police department, fails to train its officers to distinguish between behavior that provides probable cause for arrest or for the use of force, and behavior that is merely the result of a person's handicap.

164. Defendant CITY OF NEW YORK has not provided any training of any kind to its police offices concerning the legal requirement to accommodate disabilities such as blindness.

165. Defendant CITY OF NEW YORK has provided no training of any kind to its officers concerning how to recognize when an individual is blind.

166. Defendant CITY OF NEW has failed to provide any training concerning how to deal with blind people.

167. Defendant CITY OF NEW has failed to provide any written guidelines to police officers for proper interactions with blind people.

168. For example, the NYPD Patrol Guide, which is approximately 2,000 pages, mentions blind people only once. It states that police should not take "enforcement action against a blind person for violation of the Canine Waste Law." This is the only guidance in the entire Patrol Guide for police officers dealing with blind people.

169. It is foreseeable to a moral certainty that NYPD officers will encounter blind people on a regular basis.

170. It is foreseeable to a moral certainty that blind people will have difficulty, as compared to sighted people, in (among other things):

    a.    Identifying police officers who do not identify themselves verbally;
    b.    Confirming the identity of police officers who identify themselves verbally, in the absence of visual cues such a police uniform or a badge display;
    c.    Understanding instructions or commands of police officers, which may be given in whole or in part through visual means such as signs and gestures;

      d.      Complying with instructions or commands of police officers, because of the need to rely on canes, guide animals, or other means to navigate through physical space safely.

171. It is foreseeable that, when police officers are not trained that these and other difficulties exist will be encountered in police interactions with blind people, these same officers will be likely to violate the rights of such blind citizens.

172. The rights violated by the police in such circumstances will foreseeably not be limited to statutory rights under the ADA and similar statutes.

173. Lack of training for police in the issues identified above will foreseeably result in arrests of the blind people who lacked unlawful intent in their dealings with police, and who were not given a meaningful opportunity to understand and obey police instructions, in violation of such persons' Constitutional rights to equal protection and to be free from arrest without probable cause.

174. Lack of training for police in the issues identified above will also foreseeably result in the arrest of individuals like Plaintiff ALI SHABAZZ, who oppose unlawful conduct of the police towards blind people.

175. Training could make the choices police officers face when dealing with blind people and those who oppose discrimination against the blind.

176. The police could be trained, for example:

      a.      To assume that any person they encounter may be blind unless the circumstances clearly indicate otherwise;
      b.      Always to verbally identify themselves as police officers unless it is clearly unnecessary to do so;
      c.      When it is believed that a person the police encounter may be blind, to ask that person if that is the case;
      d.      To permit, unless circumstances render it unsafe, a person who may be blind to inspect the officer's badge by touch;
      e.      To inquire, when encountering someone who may be blind, what accommodation the person may require to understand instructions, to obey instructions, to walk and move, etc.;

f.      To independently ensure that a person who may be blind is able to perceive, understand, and comply with any instructions given;

g.      To provide any accommodations requested or apparently necessary, unless to do so would compromise safety or some other important law enforcement purpose;

h.      That blind people are entitled to accommodations as a statutory right;

i.      That a blind person's request for or insistence upon an accommodation is presumptively **not** refusal to obey a lawful order, or in any way a violation of the law;

j.      That sighted people are entitled by statute to oppose denial of accommodations to blind people;

k.      That a sighted person's advocacy for such an accommodation, or opposition to denial of such an accommodation, is presumptively **not** refusal to obey a lawful order, obstruction of governmental administration, or in any way a violation of the law; and

l.      That officers should consider, when determining whether probable cause exists to arrest a person who may be blind, whether the person's blindness was a factor in their allegedly unlawful conduct, including but not limited to, whether such blindness negates *mens rea*.

177.  It would be practically feasible to provide officers such training.

178.  Such training is sufficiently simple that police officers of reasonable competence should be expected to be able to understand and follow it.

179.  If police officers followed such training, incidents like that in which the Plaintiffs were arrested would be significantly less likely to occur.

180.  Instead of providing this training, police provide no training of any sort concerning how to deal with blind people and sighted people opposing discrimination against the blind.

181.  It would also be practically feasible to incorporate such principles into the Patrol Guide.

182.  Defendant CITY OF NEW YORK's failure to incorporate accommodation of the disability of blindness into the Patrol Guide is a de facto policy not to accommodate the disability.

183. As a result of Defendant CITY OF NEW YORK's violations, the plaintiffs were caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

184. Plaintiffs demand judgment against Defendant CITY OF NEW YORK in a sum to be determined by the jury at trial.

THIRTEENTH CLAIM

MALICIOUS PROSECUTION

185. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

186. Defendants initiated a prosecution against Plaintiff ALI SHABAZZ without probable cause to do so.

187. Defendants continued prosecution of Plaintiff ALI SHABAZZ knowing probable cause was absent.

188. Plaintiff ALI SHABAZZ was required to appear in court approximately 10 times to dispute and defend against these charges.

189. The prosecution terminated in favor of Plaintiff ALI SHABAZZ.

190. As a result of Defendants' violations, the Plaintiff ALI SHABAZZ was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

191. Plaintiff ALI SHABAZZ demands judgment against Defendants in a sum to be determined by the jury at trial.

FOURTEENTH CLAIM

FALSE ARREST UNDER STATE LAW

192.  Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

193.  The Defendant POLICE OFFICERS arrested the plaintiffs without a warrant and without probable cause.

194.  The Plaintiffs did not consent to their confinement and were conscious of it.

195.  As a result of the Defendants' violations, the plaintiffs were caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

196.  Plaintiffs demand judgment against the Defendants in a sum to be determined by the jury at trial.

FIFTEENTH CLAIM

ASSAULT AND BATTERY UNDER STATE LAW

197.  Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

198.  Defendants assaulted and battered Plaintiff CLAUDE RUFFIN.

199.  As a result of Defendants' violations, the Plaintiff CLAUDE RUFFIN was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

200.  Plaintiff CLAUDE RUFFIN demands judgment against Defendants in a sum to be determined by the jury at trial.

SIXTEENTH CLAIM

MALICIOUS PROSECUTION UNDER STATE LAW

201.  Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

202.  Defendants initiated a prosecution against Plaintiff ALI SHABAZZ without probable cause to do so.

203.  Defendants continued prosecution of Plaintiff ALI SHABAZZ knowing probable cause was absent.

204.  Plaintiff ALI SHABAZZ was required to appear in court approximately 10 times to dispute and defend against these charges.

205.  The prosecution terminated in favor of Plaintiff ALI SHABAZZ.

206.  As a result of Defendants' violations, the Plaintiff ALI SHABAZZ was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

207.  Plaintiff ALI SHABAZZ demands judgment against Defendants in a sum to be determined by the jury at trial.

## SEVENTEENTH CLAIM

## VIOLATION OF THE STATE CONSTITUTION

208.  Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

209.  The Defendants' conduct herein violated the Plaintiffs' rights under the New York State Constitution.

210.  As a result of the Defendants' violations, the plaintiffs were caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

211.  Plaintiffs demand judgment against the Defendants in a sum to be determined by the jury at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court

assume jurisdiction and:

     [a] Invoke pendent party and pendent claim jurisdiction.

     [b] Award appropriate compensatory and punitive damages.

     [c] Empanel a jury.

     [d] Award attorney's fees and costs.

     [e] Award such other and further relief as the Court deems to be in the
         interest of justice.

DATED:      New York, New York
             March 30, 2017

                         Respectfully submitted,

                         _____
                         David Thompson
                         STECKLOW & THOMPSON
                         217 Centre Street, 6th Floor
                         New York, New York 10013
                         Phone (212) 566-8000
                         Fax    (212) 202-4952
                         dave@sctlaw.nyc
                         ATTORNEY FOR PLAINTIFFS